Joseph W. JENNINGS, Appellant,

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued May 6, 1998.

Decided July 30, 1998.

---

Craig A. Sopin, Philadelphia, for appellant.

Harold H. Cramer, Harrisburg, for appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

FRIEDMAN, Judge.

Joseph W. Jennings (Jennings) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which denied his appeal and affirmed the Commonwealth of Pennsylvania, Department of Transportation's (DOT) three month suspension of Jennings' operating privilege pursuant to section 1785 of the Vehicle Code, 75 Pa.C.S. § 1785.[1]  We reverse.

On December 9, 1996, Jennings was involved in an automobile accident.  A police officer from the Philadelphia Police Department filled out a police report for the underlying accident, indicating "NONE" in the space provided for Jennings' insurance company.  By official notice dated February 20, 1997, DOT notified Jennings that his operator's license would be suspended for three

---

1.  DOT's suspension notice stated that the suspension was pursuant to section 1786 of the Vehicle Code, 75 Pa.C.S. § 1786.  On appeal to the trial court, Jennings argued that his case involved an alleged violation of section 1785 of the Vehicle Code rather than section 1786, and the trial court agreed.  Although DOT's brief speaks solely in terms of section 1786, DOT does not challenge the trial court's determination.  Accordingly, this case will be considered under 75 Pa.C.S. § 1785.

months due to his failure to produce proof of financial responsibility on the vehicle at the time of the accident. Jennings filed a timely appeal with the trial court, and a *de novo* hearing was held. The reporting police officer did not testify at the hearing. Rather, DOT offered a packet of documents into evidence; the packet was certified by DOT and contained a copy of the police report for the underlying accident, Jennings' driver's license record and the suspension notice. The trial court admitted the entire packet of documents over Jennings' objection to the police report as inadmissible hearsay. At the conclusion of the hearing, the trial court dismissed Jennings' appeal and affirmed DOT's suspension of Jennings' operating privilege.

■ Jennings now appeals to this court,[2] arguing that DOT failed to produce the requisite evidence to sustain its burden of proof. Specifically, Jennings argues that the police report is hearsay, and thus, it should not have been admitted into evidence. In addition, Jennings argues that the police report does not establish any requisite facts for DOT to sustain its burden of proof.[3] We agree with Jennings that DOT failed to sustain its burden of proof.

In a case involving a license suspension under section 1785 of the Vehicle Code, 75 Pa.C.S. § 1785, DOT bears the burden of proving that: (1) the licensee was the owner of the automobile involved in the accident; (2) the accident was of the type requiring notice to a police department pursuant to section 3746 of the Vehicle Code, 75 Pa.C.S. § 3746;[4] and (3) the licensee did not maintain financial responsibility on the vehicle at

the time of the accident. 75 Pa.C.S. § 1785. To prove these elements, DOT offered the police report regarding the underlying accident.[5] Thus, if the police report is inadmissible, DOT cannot sustain its burden.

There is no question that the police report, as an out-of-court statement offered to prove the truth of the matters asserted therein, constitutes hearsay. *See Yellow Cab Co. of Pittsburgh v. Public Utility Comm'n*, 673 A.2d 1015 (Pa.Cmwlth.1996). Nevertheless, DOT argues that the police report was properly admitted into evidence under the official records exception to the hearsay rule. We disagree.

The official records exception to the hearsay rule provides:

(a) **General rule.**—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

(b) **Existence of facts.**—A copy of a record *authenticated as provided in section 6103* disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, *unless the sources of information or other circumstances indicate lack of trustworthiness.*

42 Pa.C.S. § 6104 (emphasis added).

■ Because that portion of the police report which addresses the issue in this case,

---

2. Our scope of review in a license suspension case is limited to determining whether the trial court's findings are supported by substantial evidence, whether the trial court committed an error of law or whether the trial court's decision demonstrates an abuse of discretion. *Wheatley v. Commonwealth, Department of Transportation,* 104 Pa.Cmwlth. 171, 521 A.2d 507 (1987).

3. Jennings also points out that, contrary to the trial court's statement, Jennings neither pled guilty to, nor was convicted of, operating a motor vehicle without insurance. We have reviewed the original record in this case, and we have found no evidence to support the trial court's statement that Jennings pled guilty to driving without insurance. Therefore, to the extent that

the trial court depended on Jennings' alleged guilty plea for DOT to prove its case, the trial court erred.

4. Section 3746 requires that a driver give notice of the accident if the accident involves injury to or death of any person or damage to any vehicle to the extent that it cannot be driven away.

5. The police report indicated that: Jennings was the owner of the vehicle; one person was injured; the accident was reportable; and, under insurance company, the report stated "NONE." DOT also offered other documents; however, these documents did not prove any of the elements required under 75 Pa.C.S. § 1785.

i.e., whether Jennings maintained financial responsibility on his vehicle at the time of the accident, lacks trustworthiness as a source of information, we conclude that the police report is not admissible under the official records exception to the hearsay rule. Where the relevant portion of the police report, the section entitled "insurance information," asks for the insurance company, it is marked "NONE"; where the report asks for the policy number, it is marked "N/A." These responses lack trustworthiness for several reasons.

▇▇▇ Official records are admissible as evidence of the existence or nonexistence of *facts.* 42 Pa.C.S. § 6104; *see* 8 *Standard Pa. Practice 2d* § 53:92 (1982). The brevity of the responses in the police report renders them ambiguous and, thus, unreliable as proof of the critical fact at issue here. Although the responses could reflect Jennings' admission to the reporting officer that Jen-

nings had no auto insurance at the time of the accident, the responses could as easily indicate Jennings' simple failure to produce proof of his insurance coverage when asked to do so by the officer.[6] If the former scenario is the case, the responses would accurately reflect the *fact* that Jennings had no insurance. However, if the latter scenario is the case, the responses would represent nothing more than the officer's *opinion*, or conclusion, that Jennings' failure to produce proof means that Jennings had no insurance; as mere opinions, the responses would be incompetent evidence. Without the testimony of the officer to provide a context for the report, we cannot trust that the police report alone provides reliable information as to whether Jennings had insurance at the relevant time. In short, the police report lacks trustworthiness regarding the fact at issue here, and thus, it was not admissible under the official records exception to the hearsay rule.[7]

6. The mere failure to produce proof of insurance does not establish that the person lacked insurance any more than the production of an insurance card will prove that the person had insurance. For example, an insurance company will send a 'proof of insurance' card to the policyholder when the policy takes effect. This card covers the entire policy period, typically six months or one year. However, if the insurance is cancelled or terminated prior to the end of the policy period, a vehicle owner would still have this proof of insurance card indicating that he or she has insurance when, in fact, that is no longer the case. As the trial court emphasized, under *section 1785 of the Vehicle Code*, the relevant inquiry is whether the owner actually "maintain[ed] financial responsibility on the motor vehicle *at the time of the accident . . . ."* 75 Pa.C.S. § 1785 (emphasis added).

7. Although we need not go any further, we point out that even assuming, *arguendo*, that the police report could be considered an official record under 42 Pa.C.S. § 6104, DOT still could not prevail because the police report was not properly authenticated and, thus, was not properly admitted into evidence. 42 Pa.C.S. § 6103 provides the method for introducing official records into evidence without the necessity of having a records custodian appear in court to authenticate the documents. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. 139 Horseshoe Corp.*, 157 Pa.Cmwlth. 283, 629 A.2d 290, *appeal denied*, 536 Pa. 635, 637 A.2d 294 (1993). One of the requirements of section 6103 is that a certificate be made by any public officer "having official duties with respect to the government unit in which the record is *kept."* 42 Pa.C.S.

§ 6103 (emphasis added). "Kept" is appropriately construed to mean the government unit which prepares the record, and here, that was the Philadelphia Police Department. To allow DOT to certify a record received from any outside source as *its own official record* circumvents the hearsay rule. Thus, we decline to accept DOT's argument that, because the report was sent to DOT, which then keeps the report, DOT can certify it pursuant to section 6103.

Importantly, we note that the Vehicle Code also requires insurance companies and physicians to send certain documents to DOT. *See e.g.,* 75 Pa.C.S. § 1786(e)(3) (requiring an insurer who has issued a motor vehicle insurance policy to notify DOT if the insurance is cancelled or terminated); 75 Pa.C.S. § 1518 (requiring medical personnel to report to DOT regarding any individual over 15 who is diagnosed as having any specified disorder). However, unlike police department records sent to DOT, the Vehicle Code specifically provides for the admission into evidence of medical documents and insurance company documents sent to DOT for the purpose of proving the facts contained in the documents. *See* 75 Pa.C.S. § 1377 (stating that documents received from insurance companies shall be admissible to support DOT's case); 75 Pa.C.S. § 1519 (stating that certain medical documents may be used as evidence to establish incompetency in proceedings to recall one's operating privilege); *Ploof v. Commonwealth*, 139 Pa.Cmwlth. 235, 590 A.2d 1318 (1991) (holding that a doctor's letter was admissible under 75 Pa.C.S. § 1519(b) as evidence in an incompetency proceeding), *appeal denied*, 530 Pa. 634, 606 A.2d 903 (1992); *see also* 75 Pa.C.S. § 1550(d) (pro-

Because the police report does not fall within the official records exception to the hearsay rule and, thus, was improperly admitted into evidence, and because the competent evidence in this case does not establish all of the requisite elements of DOT's case, DOT failed to sustain its burden of proof.[8] Accordingly, we reverse the trial court's order and rescind DOT's suspension of Jennings' operating privilege.

### ORDER

AND NOW, this 30th day of July, 1998, the order of the Court of Common Pleas of Philadelphia County, dated May 12, 1997, at No. 970301152, is hereby reversed, and the Commonwealth of Pennsylvania, Department of Transportation's suspension of Joseph W. Jennings' operating privilege is hereby rescinded.

viding for the admission into evidence of documents received from the courts or administrative bodies of other states or the federal government). We cannot overlook the fact that there is no similar provision providing for the admission into evidence of police reports sent to DOT. Indeed, where certain items are specifically designated in a statute, all omissions should be understood as exclusions. 1 Pa.C.S. § 1921; *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983).

8. DOT asks this court to consider the difficulties that DOT has in ensuring that registered vehicles are adequately covered by financial responsibility. Regardless of any difficulties DOT may have, this does not relieve DOT of its burden of proof. We note that when a vehicle owner registers a vehicle, he or she is required to provide DOT with proof of financial responsibility, 75 Pa.C.S. § 1305(d), and that DOT cannot issue a registration for a vehicle which does not have the required financial responsibility. 75 Pa.C.S. § 1306(7). In addition, insurance companies are required to notify DOT when they issue insurance on vehicles or when that insurance is cancelled or terminated. 75 Pa.C.S. §§ 1786(e)(2) and (3). Thus, DOT has means by which to prove that the required financial responsibility has not been maintained.